UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:

Christine F. Hernandez,

        Debtor.                           Bankr. No. 09-49112

Christine F. Hernandez,                 Chapter 7

        Plaintiff,                    Judge Jacqueline P. Cox

        v.                              Adv. No. 17-00280

Wells Fargo Home Mortgage,

        Defendant.

**Memorandum Opinion**

## I. Background

The Debtor, Christine F. Hernandez, sought relief under Chapter 7 of the Bankruptcy

Code on December 29, 2009.   Her unsecured debts were discharged on April 6, 2010.  She is the

Plaintiff in this adversary proceeding seeking damages for alleged violations of the discharge

injunction.

Before her discharge was entered the Plaintiff reaffirmed three debts: a loan on a 2006

Toyota Avalon with Wells Fargo Financial, Inc. ($20,600 to repaid), Docket Number 20;

a loan on a 2003 Toyota Matrix with Wells Fargo Financial, Inc. ($9,625 to be repaid), Docket

Number 21 and a Home Equity Loan on 3928 N. Oriole, Chicago with Wells Fargo Bank, N.A.

($101,484.68 to be repaid), Docket Number 24.

The docket does not disclose that the Plaintiff rescinded any of the reaffirmation

agreements by sending a rescission notice to a creditor within 60 days of its filing or before entry

of the discharge, as allowed by 11 U.S.C. § 524(c)(4).

The Plaintiff had a fourth debt, a mortgage on her residence, with a different Wells Fargo

entity, Wells Fargo Home Mortgage ("Wells Fargo Home").  That debt is the subject of this

adversary proceeding. Contrary to an  allegation at ¶ 15 of her Adversary Complaint, it was not

reaffirmed.  Her personal liability on that obligation was discharged on April 6, 2010.

According to her Adversary Complaint, approximately 10 days later on April 18, 2010,

she received a letter from Wells Fargo Home which acknowledged the discharge of her personal

liability on that debt but noted that the past due payments were to be made by May 18, 2010 or

the Mortgage Note would be accelerated and that remedies would be pursued as provided for in

the Mortgage or Deed of Trust.  She was told that the past due amount on the account was

$8,286.61 and that she had to pay it and any additional monthly charges to avoid acceleration.

The letter also noted that while it was an attempt to collect a debt, if the debt had been

discharged it was not intended as an attempt to collect a debt, but that the creditor had a security

interest in the property and would exercise its rights against the property.

Standing alone, this letter is problematic.  It acknowledges the Plaintiff's discharge,

however, it is an attempt to collect a debt.  Without more, it could be actionable.  However, the

court will evaluate the entire course of the parties' conduct, specifically the second and third

letters as well as the Plaintiff's acceptance of an offer to modify her loan.

The Plaintiff was sent another letter on May 13, 2010 informing her that Wells Fargo

Home was considering her for a program that could assist her in curing the delinquency on her

loan by adding the past due interest or escrow payments to the outstanding loan balance and/or by

2

extending the term of her loan. She was also told that until she had been approved for a

modification normal default servicing would continue. The letter also stated that it was required

by the Fair Debt Collection Practices Act to inform her that if the loan was delinquent or in

default any information collected would be used for that purpose and that if a discharge had been

obtained Wells Fargo Home would exercise its rights against the property and was not attempting

to collect the discharged debt from her personally. The Plaintiff was required to pay $4000 for

Wells Fargo Home to consider giving her a loan modification.

On July 29, 2010, Wells Fargo Home sent her a letter informing her that her request for a

modification had been approved. She had to submit certain documents and payments within 10

days or it would conclude that she was no longer interested in modifying her loan.

The Plaintiff alleges that she was convinced to reaffirm the $254,000 loan although the

property was severely underwater.

## II.  Jurisdiction

The federal district courts have original and exclusive jurisdiction of all cases under the

Bankruptcy Code, title 11. 28 U.S.C. § 1334(a). Federal district courts may refer any or all cases

under title 11, and any or all proceedings arising under title 11 or arising in or related to a case

under title 11, to the bankruptcy judges for the district. 28 U.S.C. § 157(a). The District Court

for the Northern District of Illinois refers its bankruptcy cases to the Bankruptcy Court for the

Northern District of Illinois. Northern District of Illinois Internal Operating Procedure 15(a).

Bankruptcy courts have authority to hear and determine all cases under title 11, the

Bankruptcy Code, and all core proceedings arising under title 11, or arising in a case under title

11, referred under 11 U.S.C. § 157(a), and may enter appropriate orders and judgments, subject

3

to review in the federal district courts.  28 S.C. § 157(b)(1).  This matter involves the

interpretation and enforcement of a chapter 7 discharge.  Efforts to enforce a discharge are core

proceedings as bankruptcy courts have authority to enforce their orders under 11 U.S.C. § 105(a):

"The court may issue any order, process, or judgment that is necessary or appropriate to carry out

the provisions of this title."  Because the Debtor invokes substantive rights created by federal

bankruptcy law, the discharge injunction, this matter necessarily arises under title 11 and for that

reason it is a core proceeding.  *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 108-09 (2nd

Cir. 2006) (quoting *Banque Nationale de Paris v. Murad (In re Housecraft Indus. USA, Inc.*),

310 F.3d 64, 70 (2nd Cir. 2002)).

## III. Legal Issues

### A. Federal Rule of Bankruptcy Procedure 7012(b)(6)

Federal Rule of Bankruptcy Procedure 7012(b) states that Federal Rule of Civil Procedure

12(b)-(i) applies in adversary proceedings.  Fed. R. Bankr. P. 7012(b).  Wells Fargo Home is

seeking dismissal of the Plaintiff's Adversary Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief can be granted.

A complaint has to contain sufficient factual matter to state a claim to relief that is

plausible on its face to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A claim is plausible on its face when the complaint contains factual content that supports a

reasonable inference that the defendant is liable for the harm alleged.  *Id.*  The complaint should

be dismissed only if the plaintiff would not be entitled to relief under any set of facts that could

be proved consistent with the allegations.  *Visiting Nurses Ass'n of Southwestern Indiana, Inc. v.

Shalala*, 213 F.3d 352, 354 (7th Cir. 2000).  In making the plausibility assessment herein, the

4

court will rely on its "judicial experience and common sense." *Connor v. JP Morgan Chase Bank, N.A.*, 2016 WL 7201189, *2 (N.D. Ill. 2016) *(quoting McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

### B. Allegations

The Plaintiff alleges that the actions of Wells Fargo Home amount to wilful violations of 11 U.S.C. § 524(a)(2) which prohibits a creditor from enforcing a discharged debt as a debtor's personal obligation. She contends that this conduct has frustrated her discharge and caused her to expend unwarranted time, effort and expense in seeking to enforce rights guaranteed by the Bankruptcy Code for which she seeks actual and punitive damages and legal fees.

### C. Coercive Effects Test

The Plaintiff contends that in assessing violations of the discharge injunction the court has to determine whether the creditor acted in a way that improperly coerced or harassed a debtor. *See In re Pratt*, 462 F.3d 14, 19-20 (1st Cir. 2006) where a creditor was found to have violated the discharge injunction by refusing to release a lien until its debt was paid in full although the debtors had a right to surrender the collateral. The Seventh Circuit uses the coercive effects test to resolve discharge violation issues: coercion is found when "a creditor acts to collect a debt if it acts or fails to act, in a coercive manner, with the sole purpose of collecting that debt." *In re Kuehn*, 563 F.3d 289, 292 (7th Cir. 2009).

### D. Sufficiency of Allegations

The court finds, based on the Adversary Complaint's allegations, that the Plaintiff has not alleged a violation of the discharge injunction. The contents of the three letters sent by Wells Fargo Home do not amount to improper coercion or harassment.

5

The first letter acknowledged her default and that her personal liability had been discharged. Nothing in that letter or the Adversary Complaint details any offensive conduct on the creditor's part.

The second letter informed the Plaintiff that Wells Fargo Home was considering her for a modification program: The creditor could add past due interest or escrow payments to the loan balance or extend the loan's term. She was reminded that if she had received a bankruptcy discharge the creditor was exercising its rights against the property, not her personally. She was told of a $4000 modification program application fee and that time was of the essence. Nothing therein amounts to coercion or harassment.

The third letter refers to her request for a modification and steps she had to take to finalize that effort.

The Plaintiff alleges that she was ultimately convinced to reaffirm the $254,000 debt, although she does not allege that she did not want to retain her residence. Adversary Complaint, ¶ 15. However, she did not reaffirm the debt in issue. She reaffirmed three other debts with other Wells Fargo entities, as noted above.

The reaffirmation process is governed by Sections 524(c), (d) and (k)(1) of the Bankruptcy Code. Those provisions prescribe how a debtor remains personally liable after discharge for an otherwise dischargeable pre-petition debt. Under the reaffirmation regime the Debtor and Wells Fargo Home would have had to agree that she would remain personally liable on the debt. The new agreement would have to be filed on the court docket before entry of the discharge. The Debtor would have received a notice of certain disclosures described in Section 524(k)(1). Her attorney would have to submit an affidavit representing that she was fully

6

informed during the negotiation of the agreement, that it does not impose an undue burden on her

or a dependent, and that the attorney advised her of the legal effect of the agreement and the

consequences of a default. The Debtor would have the right to rescind the reaffirmation

agreement within 60 days of its filing or before entry of the discharge. Post-discharge the debt

would be unenforceable if this regime is not followed.

There is no reaffirmation agreement on the court docket for this debt.

The court finds that Wells Fargo Home has not sought repayment as a personal liability.

Its letters stated that her personal liability had been discharged and that it was pursuing its in rem

rights.

The Plaintiff appears to suggest that when Wells Fargo Home sought payment of past due

amounts it was imposing personal liability. Not so. Wells Fargo Home had a right to foreclose,

to seek an in rem remedy if the loan went unpaid. To retain the property the Plaintiff has to pay

the debt to avoid foreclosure. After discharge, the payments remain due; however, a creditor can

no longer seek to hold her personally liable by having a money judgment entered against her.

The creditor has to seek payment from the property only, not from a debtor who has been granted

a bankruptcy discharge.

A party ostensibly exercising in rem rights may violate the discharge injunction if the

purpose or objective effect of their conduct is to coerce a debtor into paying a debt personally.

*In re Paul*, 534 F.3d 1303, 1308 (10th Cir. 2008). All Wells Fargo Home has done is seek

repayment of a loan which it can do as long as it does not try to impose personal liability when it

has been discharged. The issue is whether a creditor's conduct had the practical concrete effect

of coercing payment of a discharged debt. *In re Pratt*, 462 F.3d at 19. The Plaintiff has not

7

alleged conduct on the part of Wells Fargo Home that even approaches coercion or harassment. She wanted to retain her residence and did so. The mere mention in the letters that only in rem remedies could be pursued was not coercive. The statement represents objective reality, not harassment or coercion. After all, Wells Fargo Home may seek to obtain the property by way of the mortgage foreclosure process if the debt does not get paid.

### E. Section 524(j): Collection of Periodic Mortgage Payments Does Not Violate the Discharge Injunction

Section 524(a)(2) of the Bankruptcy Code operates as an injunction against an act to collect, recover or offset a discharged debt as a personal liability of a debtor. 11 U.S.C. § 524(a)(2). However, Section 524(j) states that Section 524(a)(2) does not enjoin against an act by a secured creditor if it retains a security interest in real property that is a debtor's principal residence, such act is in the ordinary course of business between the creditor and the debtor and is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien. 11 U.S.C. § 524(j). Wells Fargo Home has not exceeded the bounds of what Section 524(j) allows.

According to the petition for bankruptcy relief the property at 3928 N. Oriole Ave., Chicago, Illinois is her residence. *See* Petition, Docket Number 1, p. 1 (Street Address of Debtor) and p. 20 (First Mortgage on Residence will be reaffirmed). She has not alleged that Wells Fargo Home's conduct was inconsistent with the ordinary course of business between them. This creditor only sought periodic payments, as specifically allowed by Section 524(j).

The Plaintiff has not plead facts that suggest a right to relief that is beyond the speculative level. *West Bend Mutual Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

8

### F. Amending the Complaint

The Plaintiff's Response to the Motion to Dismiss does not seek leave to amend the complaint. Because Section 524(j) allows what Wells Fargo Home has done, the court finds that the Plaintiff is not entitled to relief under any set of facts that could be proved consistent with the allegations made, making amendment of the complaint futile.

#### 1. Amendment to Add a F.D.C.P.A. Claim is Futile

A recent article suggests that post-discharge communications between debtors and mortgagees should be judged by the least-sophisticated consumer standard. However, this standard would not help Plaintiff Hernandez. She would have to amend her complaint to add a claim under the Fair Debt Collection Practices Act ("F.D.C.P.A."), 15 U.S.C. §§ 1692, *et seq.* She would have to allege that she is an unsophisticated or "least-sophisticated" consumer. A district court recently noted that the Seventh Circuit evaluates such a consumer as one who is "uninformed, naive, or trusting, but nonetheless has a rudimentary understanding of personal finances and is essentially reasonable." *Johnson v. Enhanced Recovery Co., LLC,* 228 F.Supp.3d 870, 873-74 (N.D. Ind. 2017) (quoting *Durkin v. Equifax Check Servs., Inc.,* 406 F.3d 410, 414 (7th Cir. 2005)). She would also have to show that a debt collector had used "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Even if the Plaintiff is an unsophisticated or least-sophisticated consumer protected by the F.D.C.P.A., she has not alleged that Wells Fargo Home made a false, deceptive or misleading representation. An amendment to add this type of claim would be futile.

Justin R. Storer contends:

9

Fortunately, bankruptcy courts have a standard to which they should refer when determining if putatively informational communications from creditors violate the discharge injunction. In many circuits, to determine whether a statement made by a debt collector to collect a debt might be considered "harassment or abuse," a "false or misleading representation" or an "unfair or unconscionable means to collect or attempt to collect any debt," the Fair Debt Collection Practices Act (FDCPA) contemplates the application of the "least-sophisticated-consumer" standard. *(Citations omitted). See* Justin R. Storer, *Post-Discharge Communications Should Be Subject to "Least-Sophisticated" Standard*, Am. Bankr. Inst. J., March 2017, at 22.

The court notes that the F.D.C.P.A. focuses on the character of debtors and the conduct of creditors in determining liability under that act. Discharge injunction standards do not consider the debtor's condition, only whether a creditor has acted coercively to get a debtor to pay a discharged debt. *See In re Kuehn*, 563 F.3d 289, 293 (7th Cir. 2009) (Discussing the "coercive effects" test, the Court found that "the University's refusal to certify a transcript of Kuehn's grades would be an act to collect the discharged debt and would violate both the automatic stay and the discharge injunction.").

The court also notes the U.S. Supreme Court's opinion in *Henson v. Santander Consumer USA Inc.,* 137 U.S. 1718, 1719 (2017) where it noted that the F.D.C.P.A. defines debt collectors to include those who regularly collect debts "owed . . . another. " The Court concluded that "the statute's plain language seems to focus on third party collection agents regularly collecting for a debt owner-not on a debt owner seeking to collect debts for itself." Wells Fargo Home, as a creditor enforcing a debt it owns, may not be a debt collector subject to the F.D.C.P.A.

## IV. Conclusion

The Adversary Complaint does not survive Wells Fargo Home's Motion to Dismiss. Its factual allegations, when accepted as true, fail to state a claim for relief which is plausible on its

face.  The court has construed the facts plead in the Plaintiff's favor.

Plaintiff Christine F. Hernandez's Adversary Complaint against the Defendant Wells

Fargo Home Mortgage will be dismissed with prejudice in a separate Order.


Judge:   *J. P. Cox*   *Jacqueline P. Cox*

Date:  September 6, 2017

11